If it pleases the Court, good morning. My name is Katherine Butz-Warwick. I'm the attorney for Appellant Martin Schultz. Your Honors, this appeal presents fundamental questions of Article III jurisdiction arising in the context of a carefully balanced protections for debtors and creditors under the Bankruptcy Court affirmed by the District Court, would deprive Mr. and Mrs. Schultz of essentially their retirement, more than a million dollars in legal fees that Mr. Schultz incurred in connection with his attempts to... Isn't this a situation where the lawyer got him 10 million? Yes, Your Honor. Those were compensatory damages, however. In fact, the damages awarded against Union Bank were 11 million. The amount was reduced, of course, pursuant to the settlement agreement. But the 10 plus million dollars that was awarded to Mr. Schultz was awarded for loss of net worth. That may be, but didn't his lawyer do something to achieve that? Yes. There's no question that Mr. Dunne, in the underlying action against Union Bank, did a good job. And the referee, Peter Smith, in the Superior Court, awarded not only compensatory damages for loss of net worth, but rescission damages. However, between the time that the bifurcated trial was heard on the merits and decided for Mr. Schultz, and on the eve of the damage phase of the trial, Mr. Dunne negotiated and imperfectly documented a settlement agreement, a high-low damage cap, which had the effect of depriving Mr. Schultz of the restitution award and of delaying the beginning of an annuity stream of payments for which Mr. Schultz had bargained. Mr. Schultz was damaged in his attempts to construe and reform that agreement, and those damages accrued for the purposes of legal malpractice. He was aware. He discovered the damages virtually immediately. Those damages accrued at the very earliest on December of 1978, Mr. Dunne having been his attorney continuously through December of 1997. So when we look at the Court's ruling on the issue of set-off, set-off would apply here, Your Honors, if there existed at any time a non-timed barred period. I'm not following the relevance of this. I understood your argument not to be something to do with the merits, but simply a jurisdictional argument. Well, there's a jurisdictional argument that bears upon the merits, Your Honor, because the Bankruptcy Court, in violation of both the Section 362, which is the automatic stay protection, and notwithstanding the fact that at the time the Bankruptcy Court entered declaratory judgment on Mr. Dunne's cross-claim for declaratory relief allowing his claim, Mr. Dunne's claim was at that time and at all times during the pendency of that declaratory judgment action, at all times that claim was deemed allowed. Mr. Dunne did not suffer actual harm sufficient to achieve standing under Article III. And I have cited to the Court cases that impose Calderon probably is the closest on the facts. Under Calderon, a declaratory judgment action seeking to determine which law applied to a habeas action brought when no habeas action was pending lacked the case requirement under Article III under the Case and Controversy Statute, constitutional provision. This is very similar. At the time Mr. Dunne's claim was deemed allowed, if no objection had been filed to it, Mr. Dunne was protected for the balance of the case. There was a legal protection for Mr. Dunne and his claim, and as a result, he suffered no actual harm under the threatened or actual injury standard of Warth, cited to you under the same standard cited in Lujan. The constitutional issue arises in the first appeal. The bankruptcy court essentially granted Mr. Dunne relief from stay, allowed and paid his claim, removing over $250,000 from the assets of the estate without the showing of cause that's required by Section 362 for relief from stay and at a time where Mr. Dunne had no standing. The action in which the bankruptcy court made that ruling was a declaratory judgment action that dealt with the priority of claims in the stream of payments that was due to Mr. Schultz. That issue was resolved by a settlement among all the parties with the bank, and the pending cross-motion of Mr. Dunne was moot. Mr. Dunne did not have The bankruptcy court lacked case and controversy jurisdiction over the proof of claim of Jack Dunne at that time. Now, I'd like to go back to the set-off because it is of concern since to the extent that this court may conclude that Mr. Schultz's claim was time-barred under California law, the fact that there was a period of time, the year after which Mr. Dunne resigned as his attorney, that Mr. Dunne had claims against Mr. Schultz for attorney's fees arising from his representation in the union bank litigation, and Mr. Schultz had claims against Mr. Dunne for malpractice. The California set-off provisions will provide that where cross-demands This is section 431.70. Is this in your brief, this argument? Oh, yes, Your Honor, absolutely. It's in both the opening brief and the reply. You've got about a minute left, so if you want to sum up. Yes. Where there are offsetting claims, it is irrelevant as to the for the actions as they arise in the context of the court. The bankruptcy court concluded that there was no set-off merely because the bankruptcy court looked at Mr. Schultz's claim as an affirmative claim for relief. In fact, the pleadings are clear. Mr. Schultz seeks the set-off to Mr. Dunne's affirmative proof of claim. The set-off provisions, the set-off pleadings in the adversary proceeding brought by Mr. Schultz against Mr. Dunne are brought defensively to Mr. Dunne's proof of claim. Thank you, Your Honor. Thank you very much. I was going to reserve. Two seconds. I have a second. Thank you. We'll round that up to a full 30 seconds for you. Thank you. Keith Dobbins on behalf of the appellees. May it please the Court. I didn't understand this to be a standing argument. I understood it to be a jurisdictional argument. Could you get the mic a little closer? I'm sorry.  I wanted to respond to this jurisdictional argument that the Court lacked jurisdiction to adjudicate the validity of Mr. Dunne's lien, as well as the allowance in essence of the claim in the context of declaratory relief action. The argument was really that there was an absence of a case of controversy. There was both a case and a controversy in two respects. One, the Union Bank litigation created that case, and it created the controversy. The argument is that when we settled Union Bank's claim of recoupment, that all of the issues went away. And if you look at Union Bank's complaint, and in particular, their allegations at paragraphs 46 through 49, that's ER at 126 and 127, you will see that they were seeking additional relief in addition to the recoupment. They asked for direction as to whom these payments should be made after they recouped. I'm not going to go and spend the time dealing with specific allegations, but those issues were specifically reserved in the settlement agreement, and it was reserved in the settlement agreement at ER pages 305 and 306. If you go back to the settlement, you'll see that all we were resolving was how their claim of, quote, recoupment was going to be paid at 120 a year for five years. All other issues were reserved to be determined by the bankruptcy court. It specifically set forth all of the relief sought by the cross motion for summary judgment as to the remaining cross defendants other than the bank are expressly retained, and the court reserved jurisdiction to adjudicate those issues. So not all of the issues that the bank brought in their complaint were resolved. They were reserved. And so we still had the cross claim and the cross motion for summary judgment. The argument is that simply because there was a proof of claim filed, that the objection had not been filed in response to that, hence it was deemed allowed, given prima facie validity, and there was no dispute, hence no case of controversy. It's a ridiculous argument. There is no authority cited for it. And the court had clearly had jurisdiction to decide not only under its core jurisdiction, the validity extent of priority of the lien, but what the validity of the lien was and whether or not there was an underlying claim which that lien secured. So the court determined to allow the claim as well. This argument about this is a violation of 362 and it throws the entire bankruptcy process on its head, again, no authority for that. There is a case which I would ask the Court to take a close look at. It was by this Court in Kennedy v. Cowan, I believe, In re Kennedy. And there the jurisdictional issue was discussed. I do. I do. And there, there was an adjudicate, this court determined, because the jurisdictional argument was raised by the debtor, that the bankruptcy court didn't have jurisdiction to determine not only the dischargeability of the claim, which is also a core proceeding and a 7001 adversary proceeding, that the court didn't have jurisdiction to also adjudicate the claim, the underlying claim. And they said the creditor should, in essence, seek relief from stay, go back into state court, liquidate the claim, and then come to the bankruptcy court. And this court said, you know what, that may be a proper procedure, but it's not the only procedure. And the court has jurisdiction in the context of a non-dischargeability, granted, slightly different, not on all fours, but very close. In the context of a declaratory relief action for non-dischargeability, the court could also determine the claim itself. And so there are, although there are processes set forth in rules and procedures governing adjudication of claims, it is not the only procedure. And, of course, the brief goes into whether or not adjudication of claims under the bankruptcy rules is a special statutory procedure. We laid out the argument as to why that is not the case. Claims get adjudicated in bankruptcy in all sorts of contexts, including non-dischargeability proceedings, determination of validity, priority, extent of liens, all sorts of adversary proceedings. Also, the fact that when you have an objection to a claim joined with a demand for relief, which creates an adversary proceeding, that it all becomes an adversary proceeding, it's clear that the rules regarding adjudication of claims are not exclusive under the bankruptcy code or the bankruptcy rules. There are other mechanisms and procedures for adjudication of claims. Calderon is a habeas corpus. I mean, it's completely inopposite. It's not controlling. And I quite frankly don't understand the relevance of it. I want to jump ahead to the issue of statute of limitations. Throughout the briefs, both in appellant's opening brief and the reply brief, they rely upon the ITT versus Niles case. They allege that what this was was transactional malpractice. And why they continue to rely upon a case which has been expressly overruled by the Supreme Court, California Supreme Court, and the subsequent Jordache decision is beyond me. But it was expressly overruled. And we cited Jordache, and I think the Court should take a look at Jordache, because any distinction between regular litigation malpractice or transactional malpractice in terms of legal malpractice has been extinguished. There is no difference. It's a question of when the actual harm was incurred. Here, clearly, Schultz knew about the purported failure to negotiate certain provision in the settlement agreement, which is referred to as the confidential settlement agreement. It's really the settlement agreement now. He knew about that. And he incurred injury immediately when he started incurring attorney's fees. And he's had two subsequent pieces of litigation, a bankruptcy court litigation and state court litigation, in which he lost on both counts. And he was suffering injury all along. So, clearly, the one-year statute had expired on that. There's another argument which we touch upon in the briefs. It wasn't discussed today about the contention that there was an alternative settlement offer that Mr. Schultz was not made aware of. We talk about that, and I think that's discussed. I'm not sure at which page, but it's clear that the bankruptcy court made a specific finding that Mr. Schultz knew or should have known in September of 2000, that what the facts were which comprised that particular allegation. That's the allegation is in paragraph 81. It's ER at 193 of Mr. Schultz's complaint. There's further argument. So I think that is clearly barred, and that's a finding of fact, which I think under the standard for review of bankruptcy court findings is clearly erroneous. I don't think the bankruptcy court's finding that Mr. Schultz knew or should have known in September of 2000, of what the facts generally were comprising the claim sufficient to put him on notice, that that started the running of the statute. Hence, it was barred by the time he filed his bankruptcy. The issue of setoff, it's, you know, the appellant is trying to turn a proof of claim and make it really more than it is. If the debtor doesn't list a proof of claim or a claim on a schedule that's being disputed, contingent, or doesn't schedule it at all, you don't need to file a claim unless it's not scheduled. But if it's scheduled and it's in the right amount, you don't need to file a claim. Here the debtor's schedule that's being disputed clearly in his schedules and his amended schedules, which by the way goes back to the fact that there was also a case of controversy at the inception of the bankruptcy case to support jurisdiction with respect to the declaratory relief that was granted, that was argued in the brief. But all he does is file a proof of claim. That doesn't initiate any action in bankruptcy court. The action that gets initiated is when the debtor decides whether or not to object to it. And here they did. They filed the objection, and they joined the objection with a demand for relief, i.e., the claims of malpractice, which became an adversary proceeding. But the mere fact that you file a proof of claim, it's not a proceeding. It's not this, quote, affirmative action that's being taken by Dunn against Schultz. The affirmative action was really taken by Schultz against Dunn as determined by the bankruptcy court, Judge Donovan, and affirmed by Judge Klasner on appeal. Here they felt, they found specifically, and I think that the rationale is correct, that you can't use set-off affirmatively. It's a defense. It's a defense to payment. And what they should have done is, in the first adversary proceeding, which is the subject of Appeal 04-55346, when all the issue of the claim, the lien, the right to payment was raised, that's where they should have come in and answered it and affirmatively sought a set-off. But they didn't. They sat back. They didn't do anything. And the Court should note again that in connection with the first adversary proceeding on the cross-claim and the cross-motion for summary judgment, nine seconds left. I don't think there's any right of set-off. I think clearly they tried to do something that the statute doesn't allow. Thank you very much, Mr. Donovan. Thank you. Excuse me. Judge Fletcher. Yes, Judge Fletcher. Are there any issues that are still open and not final? In terms of the bankruptcy proceeding? No. These three appeals dealt with the two summary judgment orders and the third order overruling the objection to the claims. It resolved it. Again, in response to the question, it's not necessarily in the record. But the Bankruptcy Chapter 11, there was a plan. It was confirmed. It provided for payment in accordance with the terms of the judgments and the orders which are now in effect. And that is the state of the record right now. Payments are being made. The Bank has been making the payments yearly to the debtor and the dispersing agents on the unrecoup portion, the $300 less the $120 they keep for five years. The $180 is being paid out and distributed. And that will go on consistent with the terms of these orders. Well, the August 1 summary judgment order apparently didn't address Schultz's objections. Is that correct? You're talking about the second summary judgment in the second? It did not. The argument is that that goes to the issue of finality and whether the bankruptcy court was divested of jurisdiction. Is there a specific issue you would like me to discuss and address? I just want to know. It seems to me that's not finally disposed of. I don't think it was. Neither did the Bankruptcy Court or the District Court. That was a continuous adversary proceeding. Appellant makes this argument repeatedly, which is incorrect, that when the Bankruptcy Court entered that August 1, 2003, summary judgment, it dismissed not only the complaint, which is all it says, but it dismissed the objection and the complaint. Are we sure about that? Well, you know, the best person to know would be the person who made and entered the order, and that was Judge Donovan. And Judge Donovan determined that when he intended by the summary judgment order was only to dismiss the complaint. Hence, when we said we need a disposition of the other, in essence, claim or cause of action, the objection, we need to have a separate order. And he agreed, and he entered the subsequent order. The argument was made by appellant at the time that, Judge Donovan, you don't have jurisdiction. You're divested because you've already made these other orders. Where do I find that order? I knew there was a reason I brought all of these files. The order – Why don't you go look for it during the break. Would you give it to the clerk if you – I will give you the site. And you're looking for the order, the subsequent order overruling the objection? Yes. I will get that for you, Judge Fletcher. Thank you. Would you kindly jot that down and give it to Pablo and also a copy to Ms. Warwick? You want an actual copy or just the reference? No, no. The citation. If it's in the excerpt of record, just cite to it. It is. I will get the tab and the page. Great. Thanks. And a copy for Ms. Warwick, too. Thank you. This case was rather difficult to sort through on the facts, and I've been going round and round. It was difficult, and there was a lot going on. But I think when you follow all three appeals through, and it hopefully makes more sense when you work it, it is difficult on its face at first. Thank you. Thank you. Ms. Warwick, you've given a minute rebuttal. Well, Your Honor, I'm going to beg the indulgence of the Court for more than a moment. I really would like to respond to these. I will direct, Your Honor, to the memorandum of decision. This is on the issue of whether the August order was final. The memorandum of decision by the Bankruptcy Court was at tab 12, paragraph B10 of the excerpts from the record. The actual order, the actual summary judgment, is tab 13. You will see in the memorandum of decision that the judge defines complaint. He defines complaint as the – as both the objections and the complaint. You'll see it there. I'm sorry I don't have the page number on this particular piece of paper. But that's where you'll find them both, Your Honor. You will also find that the follow-on order that Mr. Dunn claims is – completes that action was issued by the Court in the follow-on order, is it, at tab 24. The Court struck out, crossed out all of the adversary proceeding references in the caption. It was perfectly clear by what he did in that second order allowing – altering the tendered order. It was perfectly clear that he did not intend to enter that second order, which is the subject of the third appeal, in the adversary proceeding. The issues were argued before him and all of that is set out more fully in the district court briefs than in the briefs to this court, which were so very limited in space. Just quickly, Cowan v. Kennedy and Smith v. Young. These are the cases to which Mr. Dunn's counsel refers. They were cases that were decided under 28 U.S.C. 1334. Core proceeding is defined under 28 U.S.C. section 157. Article III trumps the statutory jurisdiction of the bankruptcy court. The entirety of the bankruptcy court's rationale for its jurisdiction to enter the first order allowing Mr. Dunn's claim on the declaratory relief action and the defense offered by Mr. Dunn's briefs arises solely from 1334 and 157. They merely argue that these are core proceedings. Roberts. Thank you very much, Ms. Warwick. Warwick. Thank you. Any questions, Judge Blucher, Judge Payne? No. If you'd like more time, we'd be happy to do it. Thank you very much. We'll give you two more minutes. There's nothing like finding out you have ten when you buy out twenty-five.  Well, why don't you use the time then, okay? I'd like – let's see. Reserved issues to be determined. In fact, the document does say that the court reserves on issues to be determined. That doesn't mean that they were to be determined in that case. I assisted in the drafting of that document. This is the settlement agreement, the final settlement agreement with Union Bank. The issues reserved to be determined would have been determined on Mr. Schultz's objection to Mr. Dunn's proof of claim. That's what was intended, and the legal import is, of course, that no action by the parties can confer Article III jurisdiction. I rely on SEC versus Blazin, California versus LaRue, American Fire versus FAM. Quickly, quickly. ITT. ITT was not overruled by Jordache with respect to the holding of the case. But Jordache, the Supreme Court moved from its discussion of a bright, clear rule for transactional malpractice and underlayered for malpractice in litigation context. The California Supreme Court in Jordache said, no, each case is going to be decided individually on a fact-by-fact basis. The opinion says so. The resolution of litigation related to alleged malpractice may or may not mark the point at which a plaintiff first sustains actual injury under Section 340.6. You'll see this in the very last paragraph of her decision. That describes the facts of ITT. That describes the facts of this case. Objection defensive. I will tell the clerk at the close of this exactly where you will find the set-off arguments in my papers. They are very important. It is entirely possible that this Court will conclude, as the Bankruptcy Court concluded, that Mr. Schultz was time-barred. I would like to go back and say that the objection to a claim that is deemed allowed under the Bankruptcy Code is not offensive but defensive. When a proof of claim is properly filed, it is deemed allowed and it will be allowed if no objection is brought. It doesn't matter that the lawyers are hitting each other over the head. It doesn't matter that it was designated as a contested claim in the schedules. It is protected by law from the date it's filed until the end of the case if no objection is filed. The objection is defensive. The defensive nature of a counterclaim is a fundamental aspect of the law. What it means is that the person claiming the set-off can't recover any more than the amount of the debt due to that person from the offensive claim or I haven't said that well, but I know you know that. I would urge the Court to overrule the Bankruptcy Court on jurisdictional grounds on its entry of the summary judgment order in the declaratory judgment action for which there was no Article III jurisdiction. I would urge the Court to overrule the District Court and the Bankruptcy Court on the issue, well, the District Court on the issue of finality and to reach, if this Court would, the question of whether Mr. Schultz's set-off rights, as against Mr. Dunn, should be litigated in the adversary proceeding brought before the Bankruptcy Court. Thank you very much for the extra time. Thank you, Mr. Dobbins. The case argued is submitted.
judges: B. Fletcher, Silverman, Paez